# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| DAISY H.,[1] )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>MARTIN O'MALLEY, )<br>Commissioner of the )<br>Social Security Administration,[2] )<br>)<br>*Defendant*. )<br>_____ ) | Civil No. 3:22-cv-00688-DJN-SLS |

## REPORT AND RECOMMENDATION

In this action, Plaintiff Daisy H. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. Plaintiff filed a Motion for Summary Judgment, asking that the Court reverse the Commissioner's decision and enter a fully favorable decision directing the award of benefits. (Plaintiff's Motion for Summary Judgment (ECF No. 13) ("Pl's Mot."); Plaintiff's Opening Brief in Support of her Motion for Summary Judgment (ECF No. 14) ("Pl.'s Mem.") at 26.) Plaintiff argues that the denial decision should be reversed on multiple grounds, all relating to evidence regarding Plaintiff's absenteeism and tardiness which she contends the Administrative Law Judge ("ALJ") failed to discuss. (Pl.'s Mem. at 2, 15, 18, 25.)

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

First, Plaintiff asserts that the ALJ failed to address absenteeism in the denial decision in a way that would allow for meaningful review. (Pl.'s Mem. at 2, 15.) Second, she contends that no substantial evidence supports the ALJ's residual functional capacity ("RFC") determination because the ALJ failed to consider and address evidence of absenteeism when formulating the RFC and no "reasonable mind could . . . conclude that [Plaintiff] had the capacity to maintain work without any limitation on absenteeism or tardiness." (Pl.'s Mem. at 2, 18 (emphasis in original omitted).) Third, Plaintiff argues that substantial evidence does not support the hypothetical questions posed to the Vocational Expert ("VE") and relied upon to deny benefits because the hypotheticals omitted limitations on absenteeism. (Pl.'s Mem. at 2, 25-26.)

In response, the Commissioner filed a Contested Motion to Remand and Brief in Support ("Motion to Remand"). (Defendant's Contested Motion to Remand and Brief in Support (ECF No. 17) ("Def.'s Mot.").) The Commissioner concedes that the "ALJ failed to discuss and explain the record evidence regarding Plaintiff's absenteeism." (Defendant's Reply in Support of Motion to Remand (ECF No. 19) ("Def.'s Reply") at 1.) The Commissioner moves the Court for entry of a final judgment reversing the ALJ's decision and remanding the case to the Commissioner for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). (Def.'s Mot. at 4.)

Plaintiff opposes the Commissioner's Motion to Remand for further proceedings. (Plaintiff's Brief in Opposition to Defendant's Motion to Remand (ECF No. 18) ("Pl.'s Opp.") at 1-2.) Plaintiff argues that this Court should exercise its discretion to reverse the final decision of the Commissioner and direct an award of benefits because "the record contains uncontroverted evidence to support a fully favorable decision." (Pl.'s Opp. at 1.)

This matter now comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on Plaintiff's Motion for Summary Judgment and the Commissioner's Motion to Remand. The parties have fully briefed the issues (ECF Nos. 13, 14, 17-19), rendering the matter ripe for review. For the reasons set forth below, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED IN PART to the extent it requests reversal and remand and DENIED IN PART to the extent it requests an immediate award of benefits; (2) the Commissioner's Motion to Remand (ECF No. 17) be GRANTED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits alleging disability beginning on December 13, 2012. (Administrative Record ("R.") at 3871.)[3] Plaintiff was denied benefits on August 11, 2017. (R. at 3871.) She did not appeal. (*Id.*)

Plaintiff filed another application on November 3, 2017, again alleging disability beginning December 13, 2012. (R. at 15, 310-15.) Plaintiff alleged that she suffered from thoracolumbar issues, upper extremity radiculopathy, chronic cervical strain, arthritis, and degenerative disc disease. (R. at 311.) Plaintiff's claim was denied initially on March 1, 2018, and again upon

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

3

reconsideration on June 29, 2018. (R. at 15.) On January 2, 2020, an ALJ found that Plaintiff was not disabled from December 13, 2012 through December 31, 2017, the date of last insured. (R. at 15-24.) Plaintiff appealed, and this Court granted the Commissioner's prior Motion to Remand under sentence four of 42 U.S.C. 405(g). (R. at 3935.)

On remand, and at the hearing on April 21, 2022, Plaintiff moved to amend the alleged onset date to August 12, 2017, and the ALJ granted that motion. (R. at 3871, 3902.) On May 5, 2022, the ALJ found that Plaintiff was not disabled from August 12, 2017, the alleged onset date as amended, through December 31, 2017, the date of last insured. (R. at 3871-82.) On October 14, 2022, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 3861-63.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). When approached by the Commissioner about a consent remand for further proceedings, Plaintiff objected, taking the position that any remand should include an instruction that the Commissioner award a fully favorable decision. (Def.'s Mot. at 2; Pl.'s Opp. at 1.)

## II.   STANDARD OF REVIEW

The Social Security Act ("the Act") defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual

findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III. THE ALJ'S DECISION

On remand, the Appeals Council directed the ALJ, among other things, to "give further consideration to [Plaintiff's] maximum residual functional capacity and provide appropriate rationale with specific reference to evidence of record in support of the assessed limitations, and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base . . . ." (R. at 3871.)

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 3872-82.) *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 12, 2017, the alleged disability onset date, as amended, through December 31, 2017, her date last insured. (R. at 3874.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: lumbar facet osteoarthritis, degenerative disc disease, bilateral knee osteoarthritis, and bilateral carpal tunnel syndrome. (R. at 3874-75.) At step three, the ALJ determined that through the date of last insured, Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 3875.)

The ALJ then determined Plaintiff's RFC. (R. at 3875-80.) Based on the evidence in the record, the ALJ found that through the date of last insured, Plaintiff could perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> [Plaintiff] required a sit/stand option: standing once an[] hour for two to three minutes while remaining on task; use of an assistive device, such as a cane, to travel to and from her workstation; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; reach from waist to chest level frequently bilaterally; reach above shoulder level occasionally bilaterally; handle (gross manipulation) and finger (fine manipulation)

frequently bilaterally; operate foot controls occasionally bilaterally; and would be off-task eight percent during the work day.

(R. at 3875.)

In arriving at the RFC, the ALJ acknowledged the following regarding Plaintiff's medical appointments: (1) Plaintiff "went to the Veteran Affairs Medical Center (VAMC) for treatment" (R. at 3876); (2) "she went for routine examinations, blood work, x-rays, and specialty appointments" (R. at 3876); (3) she tried injection treatments, therapy, and acupuncture without long-term relief from pain (R. at 3876); (4) she has a long history of treatment for musculoskeletal pain at the VAMC (R. at 3876); (5) medical records showed appointments for imaging scans, physical examinations, carpal tunnel release, radiofrequency ablation for lumbar facet arthrosis, medication review, physical therapy, occupational therapy, and steroid injection treatment (R. at 3876-78); and (6) she received referrals to Tai Chi, acupuncture, and water therapy (R. at 3877). The ALJ, however, failed to explain how or whether he considered this evidence in reaching the RFC, which contained no limitations regarding absenteeism. (*See* R. at 3875-80.)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors. He found that through the date last insured, Plaintiff was able to perform her past relevant work as a human resources clerk and customer service representative. (R. at 3880.) He noted that Plaintiff has at least a high school education and was 54 years old on the date of last insured, meaning that she classified as an individual closely approaching advanced age. (R. at 3881.) He further found that Plaintiff acquired skills from her past relevant work that were transferable to other similar professions. (R. at 3881-82.)

Under 20 C.F.R. § 404.1520(e), if Plaintiff can perform her past relevant work, then the inquiry ends at step four. Thus, the ALJ was not required to analyze whether there were other jobs in significant national numbers that Plaintiff could perform. In any event, the ALJ noted the

8

vocational expert's ("VE") testimony that Plaintiff could perform other jobs without a need for significant vocational adjustment, including that of receptionist and appointment clerk. (R. at 3881-82.) The ALJ concluded that Plaintiff was not under a disability from August 12, 2017 through December 31, 2017. (R. at 3882.)

## IV.     ANALYSIS

Plaintiff challenges the ALJ's finding of "not disabled." She makes three arguments for reversal, all stemming from record evidence regarding Plaintiff's absenteeism. First, Plaintiff argues that the ALJ failed to address absenteeism in any meaningful way, or at all, in the denial decision. (Pl.'s Mem. at 13-18.) Second, she contends that substantial evidence does not support the ALJ's RFC determination, which contains no limitation relating to Plaintiff's absenteeism. (Pl.'s Mem. at 18-23.) Finally, Plaintiff argues that had proper hypotheticals been presented to the VE, which included limitations relating to Plaintiff's absenteeism, Plaintiff would have been precluded from performing both her past work and any other work available in the national economy. (Pl.'s Mem. at 23-26.) As a remedy, Plaintiff seeks an order from this Court awarding her benefits. (Pl.'s Mem. at 26; Pl.'s Opp. at 1.)

In response, the Commissioner concedes that the decision should not be upheld and seeks reversal under sentence four of 42 U.S.C. § 405(g). (Def.'s Mot. at 1, 4; Def.'s Reply at 1-3.) The Commissioner, however, disputes that a direct award of benefits is appropriate in this case and instead seeks remand for further administrative proceedings, including a new hearing and decision on the impact of absenteeism on Plaintiff's RFC. (Def.'s Mot. at 1, 2; Def.'s Reply at 1-3.)

For the reasons discussed below, and on the record presented in this case, the Court finds that the ALJ's failure to discuss the evidence regarding Plaintiff's absenteeism or otherwise articulate how he considered such evidence in determining the RFC precludes this Court's ability

9

to conduct a meaningful review. In the absence of an adequate explanation from the ALJ, the Court cannot find that substantial evidence supports the ALJ's RFC determination. The Court also cannot find this error harmless given the VE's testimony that a certain level of absenteeism would preclude Plaintiff from gainful employment. The Court, however, declines to direct the award of benefits. The Court can find neither that the record conclusively establishes that Plaintiff's absenteeism would exclude her from employment nor that reopening the record would serve no purpose. Therefore, the Court will recommend that this matter be reversed and remanded for further administrative proceedings.

### A. The ALJ Erred by Failing to Analyze Plaintiff's Potential Absenteeism or Explain How He Considered Record Evidence Regarding Her Absenteeism

In the underlying administrative proceedings, Plaintiff raised absenteeism as support for her disability claim. For example, in pre-hearing briefing, she argued that her treatment records "show a consistent pattern of frequent treatment that exceeds employer tolerances for absenteeism." (R. at 4049.) The ALJ and Plaintiff discussed the absenteeism issue at the April 21, 2022 hearing. Plaintiff's counsel argued at the hearing that "her treatment is so substantial and frequent as is shown objectively through the medical records over the years . . . that she's just unemployable." (R. at 3903.) The ALJ asked Plaintiff to explain her regular treatment at the VAMC and asked if she could schedule multiple appointments for the same day. (R. at 3905-06.) In response, Plaintiff explained that she has multiple issues, sees multiple specialists, and prefers not to schedule too many appointments in a day "because you just don't know…how the appointment is going to go and they do run behind a lot." (*Id.*) When asked about combining appointments, Plaintiff responded that that option depends on availability. (R. at 3906-07.) Plaintiff testified that she had never been offered to schedule an appointment at night or on the weekends. (R. at 3913, 3915.) Other record evidence, which Plaintiff summarizes in a chart (Pl.'s

10

Mem. at 3-11; Pl.'s Opp. at 8-15), supported Plaintiff's argument that she received substantial medical treatment during the period at issue (*see, e.g.*, R. at 1262-63, 1574-79, 1637, 1654-62). When the ALJ failed to ask the VE about a hypothetical involving any sort of absenteeism, Plaintiff's counsel inquired about that issue. (R. at 3917-22.) The VE testified that an employer's tolerance for absenteeism was limited to "[n]o more than 1 regularly scheduled working day per month or in a 30-day work cycle" and that "any incomplete workday…arriving late and leaving early…would be tantamount to not completing a full workday or being absent." (R. at 3922.) At the close of the hearing, Plaintiff's counsel again raised the issue of absenteeism, arguing based on the VE's testimony and the objective records, "there's no way that [Plaintiff] could have gone to work and not been tardy or absent, you know, less than a day a month during the period at issue." (R. at 3925.) Despite these discussions of absenteeism, while the ALJ's decision acknowledged certain record evidence regarding Plaintiff's multiple medical appointments and treatment routine, the ALJ failed to adequately explain or analyze how Plaintiff's medical appointments or treatment would impact absenteeism. (R. at 3868-82.)

On this record, the Court finds error in the ALJ's failure to discuss or explain the record evidence regarding Plaintiff's absenteeism or how he considered it in arriving at the RFC. *See, e.g.*, *Dennis v. Kijakazi*, No. 21-2078, 2023 WL 2945903, at *1-2 (4th Cir. 2023) (unpublished) (finding reversible error where the ALJ failed to discuss record evidence regarding the claimant's absenteeism, including medical records showing frequent and extensive medical visits); *Dimailig v. Saul*, No. 1:19-cv-441, 2020 WL 6749856, at *11-12 (E.D. Va. Nov. 17, 2020) (remanding for further administrative proceedings because "all but five of plaintiff's doctor's visits over this period occurred on weekdays and presumably required her to miss work. Yet the ALJ's discussion of an absenteeism limitation was sparse," and despite VE testimony that two absences per month

11

would preclude employment, "the ALJ did not adequately consider an absenteeism limitation, despite its clear relevance given plaintiff's medical history"). This error frustrates the Court's ability to conduct a meaningful review of the denial decision.

Specifically, in the absence of any explanation as to how the ALJ considered evidence regarding absenteeism, the Court cannot find substantial evidence supporting the RFC determination, which contains no limitation relating to absenteeism. Certainly, the ALJ might have found that Plaintiff did not credibly establish that she would miss work to the extent that it would preclude substantial gainful activity. But the ALJ did not articulate those findings or explain why he excluded any limitation relating to absenteeism from the RFC. The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ failed to do so here. Given the lack of explanation, it is impossible to discern – without improperly speculating and inserting *post hoc* rationale for the ALJ – whether the ALJ sufficiently considered absenteeism or tardiness as a potential limitation to Plaintiff's ability to work. *See Newman v. Bowen*, No. 88-2209, 1989 WL 106816, at *2 (4th Cir. 1989) (unpublished) (reversing and remanding for rehearing because "[w]ith no explanation of why the ALJ totally discounted evidence of frequent and unpredictable absenteeism, we cannot conclude that substantial evidence supports his finding that [the claimant] could find substantial gainful employment"). The Court acknowledges that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision…." *Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). But in this case, the ALJ, on remand, should have addressed Plaintiff's absenteeism given the prominence of this issue.

12

The Court further finds this error does not constitute harmless error when considered alongside the VE's testimony that anything more than one absence or tardiness per month would preclude employment. For VE testimony to be relevant or helpful, it must be based on consideration of all the evidence and in response to proper hypotheticals from the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006). Here, the ALJ found that Plaintiff could perform her past relevant work and noted the VE's testimony that other work was available nationally that could be performed by an individual having the same age, education, past relevant work experience, and RFC as Plaintiff. (R. at 3880-81.) The VE also testified, however, that an employer's tolerance for absenteeism was limited to no more than one working day a month. (R. at 3922.) Plaintiff's absenteeism therefore could potentially impact her ability to perform her prior work or any other work.

Based on these errors, the Court will recommend that the decision be reversed.

### B. Remand for Further Proceedings, Rather Than an Award of Benefits, Is the Appropriate Remedy

Section 405(g) of the Act authorizes the Court to reverse the administrative decision, "with or without remanding the cause of rehearing." 42 U.S.C. § 405(g). *See also Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987); *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971). Where, as here, the Court "has no way of evaluating the basis for the ALJ's decision, then the proper course, *except in rare circumstances*, is to remand to the agency for additional investigation or explanation." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (emphasis added). On the other hand, reversal with a direct award of benefits would be appropriate "*[o]nly* in the unusual case" where it is "clear on review, despite the absence of an explanation from the ALJ, that the record does *not* contain substantial evidence that could support" a denial of benefits. *Carr v. Kijakazi*, No. 20-2226, 2022 WL 301540, at *3-4 (4th Cir. Feb. 1, 2022) (first emphasis added)

(unpublished). In other words, reversal without remanding for further proceedings would be appropriate only "where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden*, 493 F.2d at 1012 (4th Cir. 1974).

Plaintiff contends this case warrants a direct award of benefits for two reasons. First, Plaintiff asserts that the record "contains uncontroverted evidence to support a fully favorable decision." (Pl.'s Opp. at 1.) Second, Plaintiff argues that such an award is appropriate as a matter of equity. Specifically, Plaintiff expresses frustration at the fact that this case has spanned five years and the Commissioner has "already had two opportunities to get this right." (Pl.'s Opp. at 1-2.) The Court addresses each argument in turn but finds neither warrants an award of benefits rather than a remand for further proceedings.

### 1. *The Record Does Not Conclusively Establish Plaintiff's Disability and Reopening the Record for Additional Review Would Allow the ALJ to Address Absenteeism*

As for Plaintiff's first argument, the Court disagrees that the record conclusively establishes Plaintiff's disability based on absenteeism. Plaintiff contends that the record shows she received medical treatment at VAMC on 28 separate days during the workweek during the period at issue. (Pl.'s Opp. at 3.) She argues that this "clearly demonstrates that [she] would have missed work or been tardy to work more than one day a month . . . ." (Pl.'s Opp. at 4.) The Commissioner, on the other hand, argues that the evidence is "subject to a reasonable debate." (Def.'s Mot. at 2.) Specifically, the Commissioner points out that some treatment records relate to regular dental or vision appointments rather than treatment relating to Plaintiff's disability, show telephonic visits rather than in-person visits requiring travel, or show attendance at mindfulness meditation workshops. (Def.'s Mot. at 2-3.) While the record certainly contains evidence of Plaintiff's substantial and extensive medical appointments, the Court "can only guess why the ALJ

14

failed to address the obvious implications of [Plaintiff's] frequent medical treatment." *Dennis*, 2023 WL 2945903, at *5. The record contains unresolved questions about Plaintiff's absenteeism, and the Court declines to make factual leaps to answer those questions. "Just as it is not [the Court's] province to 'reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ,' it is also not [the Court's] province . . . to engage in these exercises in the first instance." *Radford*, 734 F.3d at 296.

The Court finds those cases wherein the reviewing court directed an award of benefits distinguishable from this matter. For example, in *Hines*, the Fourth Circuit found "undisputed evidence in the record" that the claimant "does not have the capacity to function at any RFC level that requires an eight hour work day or its equivalent on a continual basis" because of the claimant's sickle cell disease. 453 F.3d at 566. Similarly, in *Evans v. Heckler*, the Fourth Circuit reversed a denial decision and directed an award of benefits because the "uncontroverted evidence reveal[ed the claimant was] permanently and totally disabled" due to a serious lung condition which resulted in multiple hospitalizations for prolonged and severe lung infections and severely impaired the claimant's pulmonary function. 734 F.2d 1012, 1014-15 (4th Cir. 1984). In *Crider v. Harris*, the Fourth Circuit found uncontroverted evidence that the claimant suffered from episodic blindness which would eliminate all alternate employment possibilities. 624 F.2d 15, 16-17 (4th Cir. 1980). This case, on the other hand, does not involve uncontroverted evidence of disability.

Instead, the Court finds the Fourth Circuit's decision in *Dennis v. Kijakazi* to be on point, and that decision remanded for further proceedings because the ALJ's "failure to discuss the record evidence regarding [claimant's] absenteeism result[ed] in [the] inability to provide meaningful review." 2023 WL 2945903, at *5. In that case, the medical records showed that the claimant was

15

admitted to the emergency room ("ER") for a total of 35 days, with 26 falling on a weekday. *Id.* at *2. The records also showed "dozens of scheduled visits to [the claimant's] health-care providers . . . , many of which were follow-up appointments from her ER visits and from previous appointments. These were in various departments, including (most commonly) rheumatology, ophthalmology, orthopedics, radiology, physical therapy, and neurology. All of these appointments were on weekdays." *Id.* While the claimant contended that she received medical treatment on 104 separate days, the Fourth Circuit found that the record showed the correct number as 71 days, with 38 days in the ER or hospital. *Id.* at *2 & n.2. The claimant argued "that the ALJ should have found her disabled by virtue of the time she would spend attending medical appointments and emergency treatment." *Id.* at *4.

The Fourth Circuit, however, found reversal and remand for further proceedings the appropriate remedy, rather than a direct award of benefits. *Id.* at *5. The Fourth Circuit found that the ALJ failed to offer any reason for discounting or rejecting the frequency of the claimant's medical treatments. *Id.* "Nowhere in the denial did the ALJ address: (1) the frequency of [claimant's] medical treatment, (2) how the frequency of [claimant's] medical treatment would impact absenteeism, or (3) how [claimant's] frequent medical treatment would impact the VE's testimony . . . ." *Id.* The claimant requested an award of benefits, arguing that the record conclusively established her entitlement to such benefits based on the medical treatment evidence and VE's testimony. *Id.* at *6 n.5. Despite the medical records and opinion evidence discussed above, the Fourth Circuit determined that "the record does not conclusively 'establish[] [her] disability and thus her legal entitlement to disability benefits.'" *Id.* (quoting *Arakas v. Comm'r Soc. Sec. Admin.*, 983 F.3d 83, 112 (4th Cir. 2020)). It found that in "failure-to-explain cases such

as this one, the proper disposition is to remand to the ALJ for an explanation." *Id.* (citations omitted).

Here, too, "the ALJ failed to discuss and explain the record evidence regarding [Plaintiff's] absenteeism." *Id.* at *5. "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the ALJ." *Id.* "[T]he ALJ's failure to adequately explain his reasoning precludes this Court . . . from undertaking a 'meaningful review' of [the ALJ's findings].'" *Radford*, 734 F.3d at 296 (quoting *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)). Yet, as in *Dennis*, the Court cannot definitively conclude that "the record does not contain substantial evidence to support a decision denying coverage." *Breeden*, 493 F.2d at 1012. Because the duty to resolve evidentiary conflicts rests with the ALJ, not the reviewing court, and there are unanswered questions regarding the ALJ's RFC assessment, the Court recommends that this action be remanded for further proceedings. *Carr*, 2022 WL 301540, at *3; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").

### 2. The Previous Remand and Length of the Administrative Proceedings Alone Do Not Warrant a Direct Award of Benefits

Plaintiff next argues that the length of the claim process and the prior remand make it unjust and unfair for the Court to order another remand, rather than an award of benefits. Although the Court acknowledges Plaintiff's frustration at the length of time her claim has been pending, it still finds remand for further proceedings warranted under sentence four of 42 U.S.C. § 405(g) and Fourth Circuit precedent.

In *Breeden*, the Fourth Circuit acknowledged that the case had been remanded once before and had been pending for almost five years. 493 F.2d at 1011-12. Still, the Court made clear that

17

the length of the process alone was insufficient to direct an award of benefits. *Id.* Instead, the Fourth Circuit found reversal without remanding appropriate under sentence four of 42 U.S.C. § 405(g) "where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Id.* at 1012.

The *Carr* decision found similar equitable reasons insufficient "grounds for directing an award of benefits in the absence of a finding that a claimant is indeed disabled." 2022 WL 301540, at *5 (citing *Radford*, 734 F.3d at 296). Specifically, the *Carr* "case ha[d] dragged on for many years, currently on its third remand to the agency." *Id.* Again, the amount of time pending and number of remands alone did not justify a direct award of benefits. *Id. See also Radford*, 734 F.3d at 296 (remanding the case for further proceedings when the district court abused its discretion in directing a benefit award based in part on length of proceedings).

Therefore, while the Court sympathizes with Plaintiff on the continuing length and growing record of her case, such equitable considerations, like the protracted length of litigation, alone do not render a direct award of benefits proper.

## V.     CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that: (1) Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED IN PART to the extent it requests reversal and remand and DENIED IN PART to the extent it requests an immediate award of benefits; (2) Defendant's Motion to Remand (ECF No. 17) be GRANTED; (3) the final decision of the Commissioner be REVERSED; (4) the case be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Report and

Recommendation; and (5) final judgment be entered under Rule 58 of the Federal Rules of Civil Procedure.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ [signature]
Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: January 12, 2024